

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-19-2008

# Ni v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3543

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ni v. Atty Gen USA" (2008). *2008 Decisions*. Paper 211.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/211

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3543
_____

XIAO QING NI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A95 673 815)
Immigration Judge:  Honorable Daniel Meisner

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 9, 2008

Before: McKEE, NYGAARD and ROTH, Circuit Judges

(Opinion filed November 19, 2008)
_____

OPINION
_____

PER CURIAM

Xiao Qing Ni petitions for review of a Board of Immigration Appeals ("BIA")

decision dismissing her appeal of the Immigration Judge's ("IJ") decision denying her

applications for relief from removal.  We will deny the petition for review.

Ni is a native and citizen of China.  She entered the United States in 2004 without

a valid entry document. Shortly after her arrival, the Immigration and Naturalization Service issued a notice to appear charging that Ni was subject to removal on this basis. Through counsel, Ni conceded she was removable and applied for asylum, withholding of deportation, and relief under the Convention Against Torture.

When Ni arrived in the United States, she gave a sworn statement to an immigration officer attesting that her name was Yun Lin and that she was born in 1983. This information was false. Ni also provided a false name for her father and a false Chinese citizen identification number. Ni told the officer that she left China because the government is "rotten," and because her mother has a lot of children and the government does not allow her to go to school. A.R. at 244.

Five days later, Ni had a credible fear interview with an asylum officer. She provided the same false name and date of birth. Ni told the officer that, when she was seven years old, a government officer went to her house and destroyed their property because her mother had three children. Ni further stated that she wanted to open a store, but she was charged many fees and taxes because her family had violated China's family planning policies. She stated that officers came to the store and attacked her and her parents. Ni said that she feared the officers would beat her again because she complained about the fees and taxes.

At her hearing before the IJ, however, Ni testified that she sought asylum for a different reason. Ni stated that someone in her village told family planning officials that she might be pregnant. In March 2004, two officials went to Ni's home and took her by

2

force to a hospital for an examination. Ni's sonogram and urine test were negative. Ni stated that she was angry and humiliated, and that she wrote a letter of complaint to government officials. Ni did not receive a response, and she posted her letter on a public building. The police went to Ni's home and told her parents that Ni must report to the police station for an interview. Ni was afraid to go home and lived with her aunt for a month. She then left China for the United States via Thailand and Japan. The government later issued a subpoena requiring Ni to report to the police for questioning.

Ni paid a smuggler to bring her to the United States. Ni testified that the smuggler told her to misrepresent her birth date when she arrived because she was young, and she would not be allowed to enter the United States if she revealed her true birth date. Ni also stated that she did not tell the asylum officer about the letter she posted because she wanted to keep her story simple. In her asylum application, in addition to stating that she feared officials would harm her because of the letter, Ni stated that she feared she would be sterilized like her mother, and that she would be jailed for leaving China illegally.

The IJ made an adverse credibility finding. The IJ explained that Ni gave false information to asylum officers upon her arrival and at her credible fear interview. The IJ noted that Ni did not explain why she provided a false name. The IJ also noted that Ni told the officer at her credible fear interview that she wanted to open a store, but at her hearing, Ni stated that the incident at the store happened when she was a child. The IJ believed that someone may have provided Ni a story to use to try to remain in the United

3

States.

The IJ further concluded that, even if credible, Ni's fear of sterilization was speculative because she was not married and did not have any children. The IJ also found Ni's fear of punishment because she left China illegally unfounded because Ni testified that she left China with a valid passport. Although Ni also stated that she feared persecution because she did not respond to the government subpoena, the IJ was not convinced that requiring Ni to report to the police to answer questions about the letter she posted rose to the level of persecution. The IJ noted that Ni stated that officials had been going to her house and asking for her on a regular basis, but found no evidence that her family members had been harmed or threatened. The IJ also found no evidence showing that it was more likely than not that she would be tortured if she returned to China. The IJ denied Ni's applications for relief and ordered her removal.[1]

The BIA adopted and affirmed the IJ's decision. The BIA found that the record supported the IJ's adverse credibility determination, noting that her testimony was inconsistent with her sworn statement, her credible fear interview, and her asylum application. Like the IJ, the BIA noted that Ni had stated in her asylum application that she would be persecuted because she left China illegally, but she testified that she left legally. The BIA also stated that Ni attested in her sworn statement that she left China

---

[1] The IJ also rejected Ni's suggestion that she could not be deported back to China until she paid off the fee she owed the smuggler. The IJ stated that there was no evidence that Ni would be harmed by anyone in China, and that, even if the smuggler threatened her, it would not be on account of a protected ground for purposes of asylum.

because her mother had a lot of children, but she testified that she left because she had spoken out against the family planning policies. The BIA concluded that, without credible testimony, Ni could not meet her burden of establishing past persecution or that she had a well-founded fear of future persecution. The BIA also agreed with the IJ's finding that Ni did not show past persecution or a well-founded fear of persecution based on her alleged opposition to the family planning policy in her village. This petition for review followed.

Where the BIA adopts the findings of the IJ and discusses some of the underlying bases for those findings, we review the decisions of the IJ and that BIA. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review factual findings, including adverse credibility findings, for substantial evidence. Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). Under the substantial evidence standard of review, a credibility determination will be upheld unless a reasonable factfinder would be compelled to conclude to the contrary. Id.

Ni argues that we should not consider her false statements when she arrived because of her young age and the fact that the smuggler gave her the information, and because she corrected her name and birth date once she had retained counsel. We have counseled against placing too much weight on airport interviews, especially when there is little information about the manner in which the interview was conducted. Chen, 376 F.3d at 223-24. However, discrepancies between the interview and an alien's testimony may support an adverse credibility determination where the discrepancies go to the heart

5

of the alien's claim. Id.[2]

Ni does not challenge the manner of her interview, and the discrepancies are not limited to her identity but go to the heart of her claim. Ni told the immigration officer that she left China because the Chinese government is "rotten," and because her mother has a lot of children and the government does not allow her to go to school. At her credible fear interview, Ni stated that she feared returning to China because she had complained about fees and taxes imposed upon her store. At her hearing, Ni testified that she left China because she feared officials would harm her because she posted a letter speaking out against China's population policies. The IJ and the BIA did not err in relying on these inconsistencies. We disagree that Ni's age excuses her false statements. Ni was almost 18 years old when she arrived in the United States.

Ni also argues that the IJ erred in relying on written statements from her credible fear interview because at her hearing she was unable to cross-examine the immigration officer with whom she spoke, that the IJ seemed to be biased against her, and that the forced pregnancy tests constituted persecution. Ni did not raise these issues in her appeal to the BIA, and we lack jurisdiction to consider them. Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003).

---

[2]Under the Real ID Act, an adverse credibility determination can be based on inconsistencies and other factors without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). This provision does not apply here because Ni's asylum application was filed before May 11, 2005, the effective date of the Real ID Act.

Ni's remaining arguments are unpersuasive. Ni has not shown – nor does the record reflect – that a reasonable adjudicator would be compelled to conclude that Ni was credible. Chen, 376 F.3d at 223. Given the adverse credibility finding, the BIA did not err in affirming the IJ's denial of Ni's applications for asylum and withholding of removal.[3] Finally, Ni has not shown that the BIA erred in affirming the IJ's decision that she did not present evidence showing that it is more likely than not that she would be tortured if she returns to China.

Accordingly, we will deny the petition for review.

---

[3]Because we conclude that substantial evidence supports the adverse credibility finding, we need not address the BIA's and IJ's alternative decision that, even if credible, Ni did not satisfy her burden of proof on her applications for asylum and withholding of removal.